[Crim. No. 5237.   Second Dist., Div. One.   Nov. 16, 1954.]

THE PEOPLE, Respondent, v. JOHN JOSEPH MARTIN, Appellant.

Hammons, Willard & Todd, Hal V. Hammons, Jr., and William O. Todd for Appellant.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, Roy A. Gustafson, District Attorney (Ventura County), and Hugh R. Gallagher, Deputy District Attorney, for Respondent.

DORAN, J.—Appellant was charged with a violation of section 502 of the Vehicle Code. A prior conviction was also alleged. The first offense had been committed a few years before. The prior was admitted and a plea of not guilty entered. A jury trial resulted in a verdict of guilty.

It is contended on appeal that, I, "The evidence is so close and conflicting that the court should closely scrutinize the case and find that any errors committed during the trial had a prejudicial effect upon the jury necessitating a reversal of the judgment of conviction."; II, "The trial court erred when it admitted evidence of previous blood tests and the deputy district attorney was guilty of prejudicial misconduct in proposing such evidence."; III, "The trial court erred in striking from the record during the defendant's final argument, evidence which had been received without objection during the trial."; and IV, "The trial court handled the case in a prejudicial manner favoring the prosecution and thereby influencing the jury in its verdict." A reading of the reporter's transcript, which consists of 285 pages, exclusive of the court's instructions, confirms appellant's contentions.

The appellant, was arrested about midnight, by two traffic officers, who testified that appellant was intoxicated. The officers testified about two or three routine tests that appellant was asked to perform at the time of the arrest. The defendant denied and resented the accusation at that time. At the county jail a medical laboratory technician was called in to make a blood test. Appellant refused to submit to the procedure and as the technician testified, "the defendant refused to answer questions for me or to undertake any of the tests or to submit to a chemical test."

Ten witnesses testified for the appellant. Some of them had seen and talked to appellant shortly before the arrest. That the evidence is really conflicting there can be no question.

It was definitely established and not controverted that appellant was suffering from a sinus condition and had been using a medicine referred to as "nose drops." It was con-

tended by appellant's counsel that this condition and the use of this particular medicine affected the so-called tests referred to by the officers at the time of the arrest. In this connection the following occurred at the trial:

"Mr. HAMMONS: Q. Mr. Martin, you did yesterday morning bring into my office at my request the bottle of nose drops that you had used during the month of February at home? A. That is right.

"Q. Does this (indicating) appear to be the bottle of nose drops that you gave to me, Mr. Martin? A. Yes, it does.

"Q. You have said that you don't know whether this had any effect upon you as far as balancing tests or anything else is concerned, is that true? A. I don't know.

Mr. HAMMONS: We would like to offer this into evidence, your Honor.

"THE COURT: All right.

"(Defendant's Exhibit No. A marked for identification and received in evidence.)

"Mr. HAMMONS: And I would like to call particular attention to the jurors, the printing on here. 'Aramine' is apparently the name of this. And the printing at the bottom of it says: 'Caution: Frequent or continued use may cause nervousness, restlessness, or sleeplessness. Individuals with high blood pressure, heart disease, diabetes, or thyroid disease should use only on the advice of a physician.'

"Q. Those are the nose drops that you were using at that time, is that true? A. Right.

"Q. Did you during the course of the day comment to several persons about your condition of sinus on February 2, 1954?

"Mr. GALLAGHER: I will object to the question on the ground that it is self-serving hearsay.

"Mr. HAMMONS: I don't know how it is self-serving, if he says that he did and we bring the people in here.

"Mr. GALLAGHER: It is incompetent in that it serves its own purpose. It is not offered as an admission by the defendant. It is simply an attempt to build up his own case by his own statements to other persons, by his own acts before.

"Mr. HAMMONS: That is right, your Honor, with no motive or design for building up his case, before February 2nd.

"THE COURT: Read the question, Mr. Reporter.

"(Last question read.)

"THE COURT: The objection is sustained.

"MR. HAMMONS: This is on February 2, the day prior to the evening that he was arrested on February 3rd.

"THE COURT: It doesn't make any difference whether it was, in my opinion, 'Did you comment on it?' That is entirely incompetent and irrelevant and immaterial.

"MR. HAMMONS: I am not asking what his comments were. I am asking if he did comment to persons on February 2nd about it and I propose to bring several persons into court to testify to that effect, the purpose being to show that he was, in fact, suffering from a sinus condition on that day.

"THE COURT: Well, that wouldn't necessarily show that he was suffering *from it but it would show that he claimed that he was suffering from it.* Well, you only asked him whether he commented on it. I think I will reverse the ruling. Overruled.

"MR. HAMMONS: Q. Can you answer the question? Did you comment? A. Yes, I did." (Italics added.)

During the argument to the jury the following occurred. Appellant's counsel argued that, "Our only purpose in offering and bringing these to you, ladies and gentlemen, to your attention, was to substantiate Mr. Martin's story that he told the officer that he had been taking these nose drops, and that they do show that it makes a person, as it states on the label and as it is in evidence——

"THE COURT: Is there any evidence in the record?

"MR. HAMMONS: Yes, your honor. This (indicating) was read into evidence.

"THE COURT: Is there any evidence in the record as to what effect these particular drops would have on the defendant?

"MR. HAMMONS: Yes. It was read to the jury.

"THE COURT: What expert testified to that?

"MR. HAMMONS: No expert. The bottle is in evidence and the label was read to the jury.

"THE COURT: There is no evidence to show what the effect would be.

"MR. HAMMONS: It is on the label here and it was read into the evidence and it was exhibited to the jury that it causes restlessness, sleeplessness and nervousness.

"THE COURT: The Court held that that was hearsay.

"MR. HAMMONS: No, your Honor.

"THE COURT: There is no evidence to that effect other than what is on that bottle.

"MR. HAMMONS: It was read into evidence.

"THE COURT: Yes, and it was objected to on the grounds that it was hearsay and, as far as the label is concerned, I sustained the objection.

"MR. HAMMONS: No, your Honor, I am sorry, that is not the situation. There was no objection. I read it to the jury. The jury read the label on the bottle and that was during Mr. Martin's direct examination.

"MR. GALLAGHER: If the Court please, I believe that Mr. Hammons is right as to the first part. I believe that he did read it in and then there was an attempt to testify subsequently and that was objected to but I am afraid that I did permit it to go into evidence. I don't mean to contradict the Court.

"THE COURT: Was that in evidence without any objection?

"MR. GALLAGHER: Yes, it was.

"THE COURT: The label and all?

"MR. GALLAGHER: The label was read to the jury without any objection.

"THE COURT: Without objection?

"MR. GALLAGHER: I am afraid it was.

"THE COURT: It was not stricken out?

"MR. GALLAGHER: The second time that it was referred to, it was stricken out.

"MR. HAMMONS: No, it was not stricken out, the contents, as to the label.

"MR. GALLAGHER: On the second occasion it was raised, as to that second bit of testimony, that was stricken out. As to the first bit of testimony, it was not.

"THE COURT: My recollection is that at one stage of the case you objected to it upon the grounds that it was pure hearsay.

"MR. GALLAGHER: That is right. That was the second time it was brought up.

"THE COURT: Didn't I sustain the objection?

"MR. GALLAGHER: Yes.

"THE COURT: *Well, that is out. If it wasn't objected to, I am going to object to it right now on my own motion, and anything about and everything that is on that label is stricken out of the record and the jury are instructed to disregard it.* It is improper testimony. You could have brought a doctor or an expert in here to testify about it, if you had wanted to, and to testify about the effect that that particular substance,

whatever it is, would have upon the defendant or anyone else, but you didn't do that. The jury are just going to have to guess at it. In any event, that is it. That is the ruling of the Court, that what is on that label is stricken out of the record now and the jury are instructed to disregard it.

"MR. HAMMONS: All right, now, your Honor, for the purpose of the record may I say that I think your conduct in that respect or your ruling is highly prejudicial to this defendant. Had I known that your Honor was going to so rule, I could well have produced an expert, but it was in evidence and I had no reason to have produced an expert and therefore did not do so. Now by your ruling you have deprived me of that opportunity.

"THE COURT: The introduction was at one time objected to on the grounds that it was pure hearsay and I sustained the objection. That is my recollection. You have a perfect right to assign my conduct as error, prejudicial error, and that is what you are doing.

"MR. HAMMONS: I do so, your Honor.

"THE COURT: All right. You have that right. You are protecting the record. But the ruling stands. The objection is sustained and what is on that label is stricken out of the record. The jury are again admonished to disregard it." (Italics added.)

That the ruling and the action of the trial judge were prejudicial there can be no question.

"Judges are not justified by the law in admitting evidence before the jury under objection and exception, and then, after the case has been argued by counsel, instruct the jury that such evidence should not be considered by them in making up their verdict. Such a course, if practiced, certainly would be out of the ordinary, and not just to a defendant." (*People v. Oldham*, 111 Cal. 648, 654 [44 P. 312].)

The incident referred to in item II of appellant's above mentioned contentions is abundantly supported by the record. Without going into detail it is sufficient to note that the prosecution obviously sought and practically established indirectly by cross examination of defendant that a prior offense had been committed. The information alleged a prior offense committed about five years before which was admitted by appellant at the time the plea was entered. In the circumstances, evidence of such a prior is inadmissible. The court's rulings during this process were error which, together with

the prosecuting attorney's conduct, were highly prejudicial. Inquiry as to previous blood tests was the medium of this process.

Appellant's other contentions above mentioned need not be detailed.

The judgment and the order denying defendant's motion for a new trial are, and each is reversed, and the cause remanded for a new trial.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied November 29, 1954, and respondent's petition for a hearing by the Supreme Court was denied December 15, 1954. Shenk, J., and Edmonds, J., were of the opinion that the petition should be granted.