[No. D036223. Fourth Dist., Div. One. Oct. 2, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
DARYL B. ARMSTEAD, Defendant and Apppellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part I.

**COUNSEL**

Sylvia Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, John T. Swan and Quisteen S. Shum, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HUFFMAN, Acting P. J.**—Daryl B. Armstead was convicted by jury of three counts of robbery (counts 4, 5, and 9). (Pen. Code,[2] § 211.) The jury also found true allegations that Armstead personally used a firearm in the commission of the counts 4 and 5 robberies (§ 12022.53, subd. (b)), and that he was armed with a firearm in the commission of the count 9 robbery. (§ 12022, subd. (a)(1).) The court declared a mistrial as to the remaining robbery counts and their allegations (counts 1-3 and 6-8), on which the jury could not reach verdicts.

As part of an agreement, Armstead subsequently pleaded guilty to the remaining robbery counts and admitted their allegations, with the understanding he would be permitted to withdraw his guilty pleas and admissions if his new trial motion on counts 4, 5 and 9 were granted. After the trial court denied his new trial motion, Armstead was sentenced to a total term of 16 years in prison pursuant to the agreement.

Armstead appealed, contending the trial court prejudicially erred by denying his section 1538.5 motion to suppress, by giving the jurors an erroneous response to their request for clarification of CALJIC No. 2.90 (Presumption of Innocence—Reasonable Doubt—Burden of Proof), and by erroneously instructing the jury with CALJIC Nos. 2.06 (Efforts to Suppress Evidence) and 17.41.1 (Juror Misconduct).

After reviewing the record in light of the briefed contentions, we asked the parties to file additional briefing on several issues stemming from the trial court's remarks during deliberations in responding to the jury's request for clarification of CALJIC No. 2.90. Because the court's remarks appeared to have had the effect of admitting the evidence of the other charged crimes as evidence of identity, motive and intent as to all other charged crimes, we asked whether consistent with due process, a court can change the basis of admissibility of evidence after the close of evidence, closing argument and the commencement of jury deliberations. We also asked that assuming a court could lawfully do so, whether the evidence in this case met the test of admissibility as established by Evidence Code section 1101, subdivision (b)

---

[2]All statutory references are to the Penal Code unless otherwise specified.

and *People v. Ewoldt* (1994) 7 Cal.4th 380 [27 Cal.Rptr.2d 646, 867 P.2d 757] (*Ewoldt*).

Having reviewed the record in light of the supplemental briefing, we conclude that a court may not expressly or impliedly change the scope or basis of admissibility of evidence after the case is submitted to the jury because fundamental fairness requires that a defendant be able to address the admissibility and purpose of evidence before the case is ready for argument, instruction and deliberation. Without such due process, a defendant's right to the effective assistance of counsel is effectively diluted. Because we cannot say that the trial court's instructional error did not contribute to the verdicts in this case, we cannot find the error harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065] (*Chapman*).) We, therefore, reverse Armstead's counts 4, 5 and 9 robbery convictions.

As Armstead has not raised any contentions on appeal regarding his remaining six convictions, they are affirmed. However, because he pled guilty to such remaining robbery counts and admitted their accompanying allegations in reliance on an agreement to permit him to withdraw such pleas and admissions if a new trial were granted in this case, in the interests of justice we direct the trial court to permit Armstead to exercise such right to withdraw those pleas and admissions on remand of this case. Should Armstead choose not to exercise such right, the matter must be resentenced on those six counts.

In light of our determinations, we need not address Armstead's other instructional error contentions. As for his claim the trial court erred in denying his suppression motion, we find no merit. We explain.

## FACTUAL BACKGROUND

Between November 1998 and the time of his arrest on the evening of March 17, 1999, Armstead committed a series of robberies, either alone or with his codefendant Agustin Delgado, who pleaded guilty to 15 robberies after their joint section 1538.5 motion to suppress was denied, eight of which were alleged to have been committed with Armstead.[3] Because Armstead does not challenge the sufficiency of the evidence to support his convictions, we briefly set out the essential facts that supported each count. We will set

---

[3]In an unpublished opinion filed June 5, 2001, we affirmed Delgado's convictions and sentence after finding his motion to suppress was properly denied. (*People v. Delgado*, D035234.)

out more fully those facts pertinent to Armstead's specific contentions in the discussion section of this opinion.[4]

*Count 1*

On November 19, 1998, about 8:35 p.m., Shelly Dixon was robbed at gunpoint by a Black male in the parking lot of her residential building on San Diego Mission Road as she adjusted some items on the passenger seat of her car she had just parked. The man, later identified as Armstead, told her, "Gimme your purse," as he pushed a gun against her neck and repeated the demand. When she finally complied, Armstead grabbed her purse and ran away.

*Counts 2 and 3*

On January 22, 1999, Hector Cordero and Lucilles Urias were robbed by Armstead at gunpoint as they were getting out of their car in the Sizzler Restaurant parking lot on Plaza Boulevard. Armstead pointed the gun at both and also poked Cordero in the rib cage with the gun when he repeated his demands for money. When Urias handed Armstead her purse, which also contained Cordero's wallet, Armstead ran to a "getaway" car driven by Delgado.

*Counts 4 and 5*

After eating dinner at the Mission Valley Bully's restaurant on January 22, 1999, Charles Osterberger and Richard Capua were robbed of their wallets by a Black male, later identified as Armstead, at gunpoint as they stood near their cars in the parking lot. Armstead put their wallets in his pocket and ran away.

Osterberger and Capua identified Armstead as their robber in a photographic lineup and at trial. Delgado also testified against Armstead regarding the Bully's robberies, saying he drove Armstead there and acted as the getaway driver when Armstead returned with the wallets from the two men he had robbed.

*Counts 6, 7 and 8[5]*

On January 29, 1999, Gary Gregory, Michele Gregory, Brenda Gonzalez, and Victor Agraz were robbed at gunpoint by Armstead as they walked to

---

[4]The facts as to counts 1 through 3 and 6 through 8 are taken from the probation officer's report because Armstead's convictions on those counts were based on his guilty plea. The facts as to counts 3, 4 and 9 are taken from the trial transcripts.

[5]Although the probation officer's report states the January 29, 1999 incident refers to counts 6 and 7, the description of the incident also includes the facts for count 8.

their car after eating dinner at the In-N-Out Burger restaurant on Southport Way. Armstead struck Gary Gregory on the shoulder before he took his wallet and then pushed him down, threatening to shoot him, before turning to the women to demand their purses. Once he had their purses, Armstead turned to Agraz who told him he did not have anything. Armstead then ran to a "getaway" car driven by Delgado.

*Count 9*

About 8:05 p.m. on March 17, 1999, a tall Black man, later identified as Delgado, robbed the cashier, Veronica Beas, at the minimart of the Exxon gas station on Kearny Mesa Road. When Delgado pointed a handgun at her, Beas opened the cash register and Delgado grabbed the money, demanding one-hundred dollar bills. When Beas said there were no one-hundred dollar bills, Delgado yanked the drawer from the register. Delgado left the store with less than $200 and ran to his Cadillac car which Armstead was driving that night. Delgado split the money with Armstead and they drove onto a freeway and headed south.[6]

Meanwhile, shortly after 8:00 p.m. that night, San Diego Police Officers Steve Schnick and Gary Avalos, who were on duty near 40th Street, received a call about a robbery in progress at an Exxon gas station. After determining the most likely routes that robbers making a "getaway" would take, they waited near Monroe and 40th Street. Around 8:15 p.m., they saw the Cadillac driven by Armstead, which was similar to the one reported to be on the lookout for in the call, exit Interstate 15 and stop at a signal light on 40th Street. When they pulled up behind the Cadillac, Armstead turned right on Meade Avenue and quickly pulled over to the curb. When the officers followed, Delgado looked around, appearing nervous and expectant. The officers stopped their car behind the Cadillac and Officer Schnick approached it on foot. He instructed Armstead and Delgado to put their hands where they could be seen. Armstead complied, but Delgado continued looking around anxiously. When Delgado did not comply with Schnick's command to put his hands on the dashboard, Officer Avalos assisted Schnick, who then had Armstead get out of the car.

While Schnick checked Armstead for his driver's license and then consensually searched his pockets, Avalos handled Delgado who became verbally and physically abusive before being restrained and searched by Avalos

---

[6]Delgado's testimony confirmed he was the person who robbed the Exxon minimart, that he divided the money with Armstead, and that Armstead drove his car that night. Delgado said he had been intoxicated that night, that he had resisted arrest after they were stopped shortly after the robbery and that Armstead had nothing to do with it.

Delgado also testified he had been involved in seven other robberies with Armstead, but could not recall where they had occurred.

and other officers. The officers found "wadded-up" money in both Armstead's and Delgado's pockets. A subsequent search of the Cadillac revealed a loaded handgun, a crumpled five-dollar bill, and a black knit cap. Delgado was identified as the robber of the Exxon gas station at a curbside lineup by Beas. She was unable to identify Armstead as being involved in the robbery.

## DISCUSSION

### I*

### *Motion to Suppress*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

### *Additional Instructions Regarding CALJIC No. 2.90*

During deliberations, the jury sent the court a note which read, "CALJIC [No.] 2.90 includes the phrase 'consideration of all the evidence' in the second paragraph. Does this phrase mean, 1) all of the evidence presented throughout the trial, or 2) all of the evidence presented per count? In other words, do we base our judgment on each count based solely on the evidence related specifically to the exact robbery and/or victim?" The court proposed to counsel that the following answer be provided the jury in response to the question: "You may consider evidence of the other charged crimes in deciding each count under consideration. In doing so you must treat the other crimes evidence as circumstantial evidence and follow the instructions on circumstantial evidence. 'Other crimes' evidence may not be considered to prove that defendant is a person of bad character or that he has a disposition to commit crimes, but may be considered by you only for the limited purpose of determining if it tends to show identity of the perpetrator, motive, or intent."

At a hearing on the matter, Armstead's counsel essentially agreed the jury could consider all the evidence, but argued the jury could not consider and use a finding of guilt on one count against Armstead on another count. Counsel further objected to using such evidence to establish identity because there had been no "signature modus operandi" established as required before its admission for such purpose. He also objected to the evidence being used for motive or intent as neither was at issue in this case. Although the trial judge agreed neither motive nor intent was at issue, she explained that she

*See footnote 1, *ante*, page 784.

had looked at CALJIC No. 2.50 which defines other crimes evidence to answer the jury query, even though counsel had not raised such in their arguments.

Defense counsel then suggested the court merely tell the jury, "You may consider all the evidence that's been presented at the trial. If you believe [Armstead] is guilty or innocent as to other counts, you may not consider that as to any other particular counts. As to each particular count, the prosecution must prove his guilt beyond a reasonable doubt."

The prosecutor strongly disagreed with "that" wording, saying the jury "can consider [all of the trial evidence] for whatever they feel that it shows or tends to show [without any limitation as Evidence Code section 1101, subdivision (b) evidence]. [¶] They can look at the big picture." The prosecutor was adamant the court should not limit CALJIC No. 2.90 with language from CALJIC No. 2.50.

The trial judge disagreed, saying it thought the jury was "fairly sophisticated" in asking the question of how to use "those other crimes evidence in deciding each count individually." Noting this situation had arisen in another case and the court had borrowed the format of CALJIC No. 2.50, it denied the prosecutor's request to take the limiting language out of the response and found defense counsel's concerns regarding the jury deciding each count separately adequately covered by another instruction. The court, however, noted it was concerned with that portion of CALJIC No. 2.50 which referred to finding other crimes evidence by a preponderance of the evidence before it can be used and suggested "hammer[ing] home" the fact such evidence in this case was circumstantial evidence that can be used if it was shown beyond a reasonable doubt. The prosecutor agreed with the court that such was necessary so that the burden of proof would not be lessened, but still disagreed with the court's limiting language in the proposed response.

The court also commented that after listening to Delgado's testimony, it was clear there was a conspiracy or plan to commit the robberies with Armstead, and thus the evidence would have been admitted under Evidence Code section 1101, subdivision (b) if such had been sought to have been admitted as other crimes evidence at the time of the trial. The court then considered adding language from CALJIC No. 2.50.1, that "within the meaning of the preceding instruction, the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed a crime other than that for which he is on trial. Then you'd have to define preponderance, and then you'd have to go the next step and say once you meet that threshold, it's circumstantial evidence. . . ." When defense counsel stated such would only confuse the jury and possibly lower the burden of

proof, the court overruled counsel's original concerns with the court's response to the jury question, commenting the matter was on the record and identity was the issue in this case. The court thereafter provided its proposed response to the jury.

On appeal, Armstead contended the trial court's response to the jury's request for clarification of CALJIC No. 2.90 was erroneous and violated the due process clause. He specifically argued the response was confusing because it contained reference to "other acts" evidence which was inconsistent with other instructions telling the jurors that each count charged a distinct crime which needed to be decided separately (CALJIC No. 17.02), and that the response improperly lowered or diluted the prosecution's burden of proof.

We requested supplemental briefing because the court's clarifying instruction "appear[ed] to have had the effect of admitting the evidence of the other charged crimes as evidence of identity, motive and intent as to all other charged crimes," which raised the question "whether a court can, consistent with due process, change the basis of admissibility of evidence after the close of evidence and indeed after closing argument and the commencement of jury deliberations?" Finally, we asked the parties whether the evidence if lawfully admissible at such late point in the trial process met the test of admissibility under *Ewoldt* and Evidence Code section 1101, subdivision (b). Having reviewed the matter in light of the record and the entirety of the briefing, we conclude the trial court's implied change of the basis of admissibility of evidence at such late point in this case did not comport with due process and effectively denied Armstead his right to counsel.

It is elemental that a fair hearing or trial, due process, and the presumption of innocence are foundations on which our criminal justice system rests. To ensure the strength of these foundations, certain rules have evolved. One such general rule is that in a criminal case the trial court must instruct on the "principles of law relevant to the issues raised by the evidence [citations] and has the correlative duty 'to refrain from instructing on principles of law which not only are irrelevant to the issues raised by the evidence but also have the effect of confusing the jury or relieving it from making findings on relevant issues.' [Citation.]" (*People v. Saddler* (1979) 24 Cal.3d 671, 681 [156 Cal.Rptr. 871, 597 P.2d 130].) Equally true are the fundamental rules that in order to have a fair trial the jury must be correctly instructed on a defendant's presumption of innocence and the meaning of reasonable doubt (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 277-278 [113 S.Ct. 2078, 2080-2081, 124 L.Ed.2d 182]), and that the defendant has the constitutional right to the effective assistance of

counsel (see *People v. Pope* (1979) 23 Cal.3d 412, 422 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]).

In addition, section 1044 makes it the duty of the trial court "to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved." Section 1093 sets forth the usual order, which may be changed when there is good cause to do so in the sound discretion of the court, of a criminal trial in which the court fulfills its duty to ensure a fair trial. (§ 1094.) The normal order of such trial is to have the prosecuting attorney offer evidence in support of the criminal charges against the defendant after the jury has been impaneled and sworn, the accusatory pleading with the defendant's plea has been read, and an opening statement has been made. (§ 1093, subds. (a)-(c).) The defendant next may offer evidence in defense and both parties may then offer rebuttal evidence before the case is submitted and argued, before the judge instructs the jury on the law. (§ 1093, subds. (c)-(f).)

Although the trial court is vested with broad discretion in determining the admission of evidence at trial, such exercise of discretion presupposes that either the prosecutor or the defendant sought to have that evidence admitted during the trial. Further, with regard to evidence of other offenses of the defendant, because such evidence is admissible only in certain exceptional situations where it is relevant to an issue (Evid. Code, § 1101, subd. (b); see 1 Witkin Cal. Evidence (4th ed. 2000) Circumstantial Evidence, § 74, pp. 409-410), any comment on such alleged offenses that have not been admitted or proved under one of the exceptions is generally improper and highly prejudicial. (See *People v. Valliere* (1899) 127 Cal. 65, 66 [59 P. 295].) So too is the comment on matters that are not in evidence. (See *People v. Hall* (2000) 82 Cal.App.4th 813, 817 [98 Cal.Rptr.2d 527] (*Hall*); *People v. Handcock* (1983) 145 Cal.App.3d Supp. 25, 32-33 [193 Cal.Rptr. 397].)

Here, the trial court's response to the jury question ran afoul of several of these foundational principles necessary to a fair trial. The trial court's response to the juror's question in effect changed the scope or basis of admissibility of the evidence, essentially redefining it as "other crimes" evidence on the issues of identity, motive and intent, without having had that evidence properly admitted for such purposes during the trial. In the usual course of considering the admissibility of "other crimes" evidence, the court follows well-established rules of evidence and law after hearing argument from counsel on the matter; this requires the court to carefully review each

count in light of the alleged "other crimes" evidence to determine its probativeness to prove a material fact other than criminal disposition and then to weigh its probative value against its prejudicial effect before it is admitted. (Evid. Code, §§ 352, 1101; *Ewoldt, supra,* 7 Cal.4th at pp. 393-407.) This was not done here.

The substantial change in the scope of the evidence before the jury as a result of the court's response to its question after the case was submitted for deliberation, also deprived Armstead of the opportunity to meaningfully challenge the evidence in its new character. The evidence as to individual counts was not offered or received during the trial as "other crimes" evidence. In addition to not having had a fair opportunity to contest the admissibility of evidence for such purpose, Armstead had no fair opportunity to argue the weight of "other crimes" evidence to the jury. We thus think the trial court's ad hoc shift in the scope of the evidence after the case had been submitted to the jury was fundamentally unfair and denied Armstead due process.

Moreover, similar to cases where error has been found by the reference to evidence that was outside the record or had not been admitted, we believe Armstead was denied his Sixth Amendment right to confront the evidence by being precluded from addressing its admissibility and purpose before the case was argued and the jury instructed. (See *Hall, supra,* 82 Cal.App.4th at p. 817.) Without the opportunity to do so, Armstead simply had no effective way to defend, argue and submit instructions on the issue of the admissibility of the "other crimes" evidence, which was not presented in trial. (*Id.* at pp. 817-818.) Nor was his counsel able to assist in meeting such evidence and advising Armstead about the change in the scope of the evidence. Thus, the court's response to the jury after the case had been fully submitted and the jury had been in deliberations for several days not only denied Armstead due process, but also denied him the effective assistance of counsel.

What the court did in this case in its response is somewhat analogous to the situation in *People v. Martin* (1954) 128 Cal.App.2d 724 [276 P.2d 43] (*Martin*), where the trial court first admitted evidence during the trial and then after the case was argued, instructed the jury not to consider that evidence in its deliberations. (*Id.* at p. 729.) In finding the ruling and action of the trial court prejudicial, the court in *Martin* stated: " 'Judges are not justified by the law in admitting evidence before the jury under objection and exception, and then, after the case has been argued by counsel, instruct the jury that such evidence should not be considered by them in making up their verdict. Such a course, if practiced, certainly would be out of the ordinary, and not just to a defendant.' " (*Ibid.,* citing *People v. Oldham* (1896) 111 Cal. 648, 654 [44 P. 312].)

In this case, nearly the opposite occurred. Rather than first admitting evidence and then striking it after argument as in *Martin*, the court here admitted evidence after argument for a purpose other than what it was admitted for at trial. In both cases, the court failed to apply the rules of evidence that govern the conduct of a fair trial.

The question remains whether the court's erroneous response or instructional error mandates reversal. Because Armstead's constitutional rights to due process and counsel were impacted, "reversal is required unless we are satisfied beyond a reasonable doubt that the [error] did not affect the jury's verdict. [Citations.]" (*Hall, supra*, 82 Cal.App.4th at p. 817.) Even though there was considerable evidence pointing to Armstead's guilt on counts 4, 5 and 9, it is impossible to know whether the court's response contributed to the convictions on those counts. Thus under the *Chapman* harmless-beyond-a-reasonable-doubt standard (*Chapman, supra*, 386 U.S. at p. 24 [87 S.Ct. at p. 828]), we cannot say the error was harmless. We, therefore, must reverse those counts.

As noted in the introduction of this opinion, because Armstead has not raised any contentions regarding his remaining six convictions, those must be affirmed. Nevertheless, as we also mentioned, in the interests of justice, Armstead must be permitted to exercise his right to withdraw his guilty pleas and admissions to those counts and their accompanying allegations which were entered in reliance on an agreement they could be withdrawn if a new trial were granted with regard to counts 4, 5 and 9.

## DISPOSITION

The convictions for counts 4, 5 and 9 are reversed. The convictions for counts 1 through 3 and 6 through 8 are affirmed. The San Diego Superior Court is directed to permit Armstead to exercise his right to withdraw his guilty pleas and admissions for the affirmed convictions in accordance with this opinion.

Nares, J., and McIntyre, J., concurred.

A petition for a rehearing was denied October 29, 2002, and respondent's petition for review by the Supreme Court was denied December 18, 2002.