Filed 3/14/14  P. v. Bourque CA5

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | F065999 |
| v. | (Super. Ct. No. BF141478A) |
| AARON THOMAS BOURQUE, | **O P I N I O N** |
| Defendant and Appellant. | |

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Michael E. Dellostritto, Judge.

Michael B. McPartland, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Kathleen A. McKenna, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Levy, Acting P.J., Cornell, J., and Poochigian, J.

A jury convicted appellant, Aaron Thomas Bourque, of misdemeanor assault (Pen. Code,[1] § 240) and two felonies: attempted first degree robbery (§§ 211, 212.5, subd. (a), 664) and making criminal threats (§ 422). In a separate proceeding, the court found true allegations that appellant had suffered a prior felony conviction that qualified as both a prior serious felony conviction (§ 667, subd. (a)) and as a "strike,"[2] and that he had served a prison term for that prior felony conviction (§ 667.5, subd. (b)). The court imposed a total prison term of 10 years, consisting of two years on the attempted robbery conviction, doubled pursuant to the three strikes law to four years, five years for the prior serious felony enhancement, and one year for the prior prison term enhancement. The court imposed, and stayed pursuant to section 654, a four-year term on the section 422 conviction.

On appeal, appellant contends (1) the court abused its discretion in admitting evidence of prior uncharged acts of criminal conduct, and (2) the court erred in imposing a prior prison term enhancement based on the same prior conviction used to impose a prior serious felony enhancement. Respondent concedes the second point. We reject appellant's first contention, find merit in the second, modify the judgment accordingly, and affirm the judgment as modified.

---

[1]    Except as otherwise indicated, all statutory references are to the Penal Code.

[2]    We use the term "strike" as a synonym for "prior felony conviction" within the meaning of the "three strikes" law (§§ 667, subds. (b)-(i), 1170.12), i.e., a prior felony conviction or juvenile adjudication that subjects a defendant to the increased punishment specified in the three strikes law.

# FACTUAL AND PROCEDURAL BACKGROUND

## *Facts - The Instant Offenses*

Judy Beggs is appellant's mother.[3]  On April 8, 2012 (April 8), at approximately 3:30 a.m., she was awakened by a noise.  She got up and, hearing appellant and someone else talking, concluded that appellant had brought a friend to her house.  She decided to stay up and she began making a cake to take to her granddaughter's house for an Easter celebration later that day.

At some point thereafter, Beggs was in the kitchen when appellant entered.  He was angry.  He yelled at Beggs, pounded on the counter tops and said he wanted to destroy the kitchen.  He complained that Beggs was going to spend Easter with his (appellant's) daughter, and that he was not invited.

Frightened, Beggs went into the garage to feed her dogs.  Appellant followed her and "grabbed [her] necklace," "held it tight against [her] neck," and said Beggs "needed to go to the bank and get him $20 and he wish[ed] he could kill [her]."  He also said, "I should kill you now."  This frightened Beggs because appellant "had threatened to do that before and [she] figured he was just going to follow through."  She walked back into the house and "heard a loud crash."  At that point, she went to her room, got her purse and keys, went to her car, and drove to a gas station, where she pulled into the parking lot and called the Kern County Sheriff's Department.

Kern County Deputy Sheriff Kenneth Young testified to the following:  On April 8, he went to a residence where he made contact with Beggs who was standing outside.  She was "shaking" and she "appeared scared."  The deputy observed "redness" on her neck.  Approximately one hour later, the redness had "dissipated."

---

**3**    Except as otherwise indicated, our factual summary of the instant offenses is taken from Beggs's testimony.

3

After speaking to Beggs, Deputy Young searched the backyard where he found Nicole Villines, "squatt[ing] down" behind a pole. She told the deputy that she was hiding because "her boyfriend" had been attempting to kill his mother by strangling her, and she (Villines) was scared.

Villines testified to the following: On April 8, she was with appellant, her boyfriend, at the home of appellant's mother. She did not tell Deputy Young that appellant was attempting to kill his mother. She did not see appellant "lay a hand" on her. She was in the backyard waiting for Beggs to "give [her] a ride."

### Facts - Uncharged Acts

Beggs testified to the following: One day in 1997, at her home, appellant "demanded money" from Beggs. She refused his demand, and he "hit [her] a few times," "slapped" her, threatened to kill her, and said "he wanted to chop [her] up and put [her] in a body bag like Jeffrey Dahmer had done." Thereafter, Beggs, "terrified" by appellant's conduct, "went to the front door to go out," but appellant, who was standing on the porch, told her to "get back in the house." Beggs went back inside and approximately two to four hours later, appellant came into Beggs's bedroom and asked if he could lie down on the bed. Beggs consented, and also agreed, on appellant's request, to rub his back. Appellant lay down on the bed; Beggs, though afraid, rubbed his back. When it appeared he was "drifting off to sleep," Beggs told him she had to use the bathroom. She then left the house, got in her car, drove to the police department, and reported "what had happened." Police went to Beggs's house and arrested appellant. Beggs suffered bruises on her arm and chest. Appellant's conduct "terrified" her.[4]

---

[4]     We refer to this incident, as described by Beggs in her testimony, as the 1997 incident.

4

*Procedural Background*

Over appellant's objection, the court ruled the evidence of the 1997 incident admissible to prove appellant's intent and motive to commit the attempted robbery and the criminal threats offense, and to show that when he committed both the uncharged acts and the instant offenses, he was acting pursuant to a common plan.

The court instructed the jury:

"If you decide that the defendant committed the uncharged offenses, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not:

"The defendant acted with the intent to permanently deprive Judy Beggs of her property;

"The defendant intended that his statements to Judy Beggs be understood as a threat; or

"The defendant had a motive to commit the offenses alleged in this case.

"In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses and the charged offenses.

"Do not consider this evidence for any other purpose.

"Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.

"If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the crimes charged in this case."

# DISCUSSION

## Uncharged Acts

Appellant argues that in admitting the evidence of the 1997 incident, the court violated Evidence Code sections 1101 and 352 and appellant's due process rights under the Fourteenth Amendment to the United States Constitution. We disagree.

### *Legal Background*

The admission of uncharged misconduct evidence is governed by Evidence Code section 1101. "Subdivision (a) of [Evidence Code] section 1101 prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion. Subdivision (b) of section 1101 clarifies, however, that this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition," such as identity, motive, intent or common plan. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393, fn. omitted (*Ewoldt*).)

The determination of the admissibility of uncharged conduct evidence to prove such facts is a two-step process. (*People v. Armstead* (2002) 102 Cal.App.4th 784, 793-794.) First, a trial court must "carefully review each count in light of the alleged 'other crimes' evidence to determine its probativeness to prove a material fact other than criminal disposition …." (*Ibid.*) Probativeness, in turn, depends on (1) "the materiality of the facts sought to be proved" (*People v. Kelly* (2007) 42 Cal.4th 763, 783) and (2) whether "the charged and uncharged crimes are sufficiently similar to support a rational inference" of such facts (*People v. Kipp* (1998) 18 Cal.4th 349, 369 (*Kipp*)).

The degree of similarity that is necessary to establish relevance varies depending upon the type of fact the uncharged acts evidence is being offered to prove. "The greatest degree of similarity is required for evidence of uncharged misconduct to be relevant to

6

prove identity." (*Ewoldt*, *supra*, 7 Cal.4th at p. 403.) The uncharged crimes must be "highly similar" to the charged offenses. (*People v. Lenart* (2004) 32 Cal.4th 1107 (*Lenart*).) A lesser degree of similarity is required to establish the existence of a common plan or scheme and still less similarity is required to establish intent and motive. (*Id.* at p. 1123; *Ewoldt*, at p. 402; *People v. Demetrulias* (2006) 39 Cal.4th 1, 18 (*Demetrulias*).)

The second step in the process of determining the admissibility of uncharged acts evidence is to determine whether the admission of such evidence would "'contravene other policies limiting admission, such as those contained in Evidence Code section 352.'" (*Ewoldt*, *supra*, 7 Cal.4th at p. 404.) Thus, it must be determined "whether the probative value of the evidence of defendant's uncharged offenses is 'substantially outweighed by the probability that its admission [would] ... create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' (Evid. Code, § 352.)" (*Ibid.*) "Evidence of uncharged offenses 'is so prejudicial that its admission requires extremely careful analysis. [Citations.]' [Citations.] 'Since "substantial prejudicial effect [is] inherent in [such] evidence," uncharged offenses are admissible only if they have *substantial* probative value.' [Citation]." (*Ibid.*)

"[O]ther crimes evidence need be proven only by a preponderance of the evidence." (*People v. Steele* (2002) 27 Cal.4th 1230, 1245, fn. 2.) On review of a trial court's ruling on these issues, we view the evidence in the light most favorable to the trial court's ruling and we uphold the ruling unless the court has abused its discretion. (*Kipp*, *supra*, 18 Cal.4th at pp. 369-371.) "A court abuses its discretion when its ruling 'falls outside the bounds of reason.'" (*Id.* at p. 371; accord, *People v. Linkenauger* (1995) 32 Cal.App.4th 1603, 1614 [section 352 ruling reversible only if "arbitrary, whimsical, or capricious as a matter of law"].)

*Contentions and Analysis*

Appellant challenges each of the court's rulings on the admissibility of the uncharged acts evidence, i.e., the court's rulings that this evidence was properly admitted to show (1) appellant's intent in committing the attempted robbery and the criminal threats offense, (2) his motive in committing the offenses charged in the instant case, and (3) that when he committed both the uncharged acts and the instant offenses, he was acting pursuant to a common plan. We address the challenged rulings in that order.

<u>Intent - Attempted Robbery</u>

"[The California Supreme Court has] long recognized 'that if a person acts similarly in similar situations, he probably harbors the same intent in each instance' [citations], and that such prior conduct may be relevant circumstantial evidence of the actor's most recent intent…. [¶] … '[T]he recurrence of a similar result ... tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act....'" (*People v. Robbins* (1988) 45 Cal.3d 867, 879.) "In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant '"probably harbor[ed] the same intent in each instance." [Citations.]'" (*Ewoldt*, *supra*, 7 Cal.4th at p. 402.)

The crime of robbery requires a specific intent to permanently deprive the victim of their property. (*People v. Anderson* (2011) 51 Cal.4th 989, 994.)

Appellant argues that the uncharged acts evidence had "limited probative value" on the question of whether he had the specific intent to permanently deprive Beggs of property because in the 1997 incident, "he ultimately received no money from his mother." We disagree. Notwithstanding that appellant did not complete the robbery he began, the court reasonably could conclude, viewing the evidence in the light most

8

favorable to the prosecution, that appellant initially had the intent to permanently deprive his mother of her property but simply did not follow through, giving his mother the opportunity to escape. The recurrence of strikingly similar conduct in the instant case "'tends … to negative … [any] innocent mental state'" and provides ample support for the conclusion that, in the instant case, appellant had the same intent and again failed to follow through. (*Ewoldt*, *supra*, 7 Cal.4th at p. 402.)

*Intent - Criminal Threat*

Section 422 requires that the threat be made "with the specific intent that the statement … is to be taken as a threat, even if there is no intent of actually carrying it out…." (§ 422, 1st par.) Appellant argues the uncharged acts evidence had "limited probative value" on the intent element of the criminal threats offense because in the 1997 incident, appellant did attempt to carry out his threat to kill Beggs. Again, we disagree.

The question before us is not whether appellant actually intended to carry out his threat. Rather, the question is whether the court reasonably could have concluded that appellant *intended that Beggs believe* he would carry out his threat. From the evidence that in the 1997 incident, appellant struck Beggs multiple times and made a gruesome reference to a notorious murder case, the court reasonably could conclude appellant intended that Beggs believe he would kill her as threatened to do. And, again, the similarity between appellant's conduct in 1997 to his conduct in the instant case supports the conclusion that appellant had the same intent in the instant case as well.

*Motive*

Appellant argues the uncharged misconduct evidence had "little, if any, probative value in demonstrating a motive for the charged offenses." Specifically, he argues that the uncharged conduct "did not give him a motive" to either rob or threaten his mother. This contention too is without merit.

9

"Other crimes evidence is admissible to establish two different types or categories of motive evidence. In the first category, 'the uncharged act supplies the motive for the charged crime; the uncharged act is cause, and the charged crime is effect.' [Citation.] 'In the second category, the uncharged act evidences the existence of a motive, but the act does not supply the motive.... [T]he motive is the cause, and both the charged and uncharged acts are effects. *Both crimes are explainable as a result of the same motive*.' [Citation.] [¶] California case law allows the admission of other crimes evidence to prove this second kind of motive. [Citations.]" (*People v. Spector* (2011) 194 Cal.App.4th 1335, 1381.)

Appellant's argument addresses only the first category of motive evidence, and we agree with appellant that the 1997 incident does not supply the motive for the instant offenses. However, because of the similarity between the 1997 incident and appellant's conduct upon which his convictions in the instant case are based, the 1997 incident was relevant to show that appellant had the same motive in both instances: to attempt to get money from his mother. (Cf. *Demetrulias*, *supra*, 39 Cal.4th at p. 15 [evidence of prior assault and robbery of different victim tended to show defendant had motive to rob victim killed in current case]; *People v. Walker* (2006) 139 Cal.App.4th 782, 803 [in trial for murdering a prostitute, evidence of prior sexual assaults tended to show defendant's "'common motive of animus against prostitutes resulting in violent batteries interrupting completion of the sex act'"].)

Common Plan

Appellant also argues that the evidence of the 1997 incident "had little, if any, probative value in demonstrating a common plan to rob his mother of her property on April 8, 2012," because in the 1997 incident, his robbery attempt was unsuccessful. We disagree.

To establish the existence of a common scheme or plan, the prior and current crimes must be sufficiently similar, but they need not be distinctive or unusual. (*Ewoldt*, *supra*, 7 Cal.4th at p. 403.) The evidence must demonstrate ""'"not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.'" [Citation.]" (*People v. Catlin* (2001) 26 Cal.4th 81, 111.)

In both the 1997 incident and in the commission of the instant offenses, appellant (1) accosted his mother in her home, (2) demanded money, (3) threatened to kill her, and (4) committed one or more violent acts. We recognize that a greater degree of similarity is necessary to show a common plan than is required to show motive or intent. (*Ewoldt*, *supra*, 7 Cal.4th at p. 402.) Taking this factor into account, we conclude the 1997 incident and the instant offenses shared so many common features the court reasonably could conclude all these offenses were committed pursuant to a common plan.

## *Evidence Code Section 352*

We turn now to the second step in determining the admissibility of uncharged acts evidence. As indicated above, in this part of the analysis we must determine if the uncharged acts evidence had "substantial probative value that is not greatly outweighed by the potential that undue prejudice will result from admitting the evidence." (*Lenart*, *supra*, 32 Cal.4th at p. 1123.)

"'The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense.'" (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1274 (*Hollie*).) As discussed above, appellant's acts in the 1997 incident were strikingly similar to his conduct underlyling his convictions in the instant case. In our view, this factor makes the uncharged acts evidence highly probative as to intent, motive, and common plan.

11

On the other side of the scale, appellant cites two factors which, we agree, militate against admission of the uncharged acts evidence: there was no evidence before the jury that appellant was convicted of any crimes based on the uncharged acts, and these acts occurred more than 15 years prior to the instant offenses. We acknowledge that where "uncharged acts [do] not result in criminal convictions," a jury "might [be] inclined to punish [the] defendant for the uncharged offenses, regardless whether it considered him guilty of the charged offenses," thus "increas[ing] the likelihood of 'confusing the issues' (Evid. Code, § 352)" (*Ewoldt*, *supra*, 7 Cal.4th at p. 405), and the remoteness in time of the uncharged acts evidence favors its exclusion (*People v. Harris* (1998) 60 Cal.App.4th 727, 739). However, although both of these factors are properly considered in an Evidence Code section 352 analysis, neither compels exclusion. (See, e.g., *People v. Ing* (1967) 65 Cal.2d 603, 612, impliedly disapproved on another point in *People v. Thompson* (1980) 27 Cal.3d 303 [evidence of uncharged misconduct held admissible even though prior offense was committed 15 years before charged offenses committed].)

Moreover, we reject appellant's contention that his conduct during the 1997 incident was "*much* more inflammatory" (italics added) than his conduct in committing the instant offenses. (See *Hollie*, *supra*, 180 Cal.App.4th at p. 1274 [factors affecting the prejudicial effect of uncharged acts include whether the uncharged acts resulted in criminal convictions and whether the evidence of uncharged acts is stronger or more inflammatory than the evidence of the charged offenses].) Given that appellant struck Beggs multiple times in the 1997 incident whereas his violent conduct in the instant offenses was limited to grabbing her necklace and holding it tight against her neck, his conduct in 1997 was marginally more egregious. But, on both occasions, he committed acts of violence and threatened to kill Beggs. In our view, the uncharged acts evidence was not significantly more inflammatory than the evidence of the instant offenses.

12

To summarize, our examination of the record reveals that the uncharged acts evidence was highly probative, and, although the uncharged acts were remote in time and there was no evidence those acts resulted in any convictions, the evidence of those acts was not significantly more inflammatory than the evidence of the charged offenses. On this record, the court's conclusion that the evidence was not made inadmissible by Evidence Code section 352 was well within the bounds of reason. Accordingly, we will not disturb that conclusion on appeal.

*Due Process*

Appellant argues that the uncharged acts evidence constituted evidence that "appellant had a propensity to threaten his mother and ask her for money," thereby reducing the prosecution's burden of proof in violation of appellant's right to due process of law under the United States Constitution. There is no merit to this contention.

To prevail on a claim that he was denied a fair trial or due process of law by the admission of uncharged acts evidence, appellant must show "admission of the evidence was erroneous, and that the error was so prejudicial that it rendered his trial fundamentally unfair." (*People v. Garcia* (2008) 168 Cal.App.4th 261, 275.) "'Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must "be of such quality as necessarily prevents a fair trial." [Citations.] Only under such circumstances can it be inferred that the jury must have used the evidence for an improper purpose.' [Citation.] 'The dispositive issue is ... whether the trial court committed an error which rendered the trial "so 'arbitrary and fundamentally unfair' that it violated federal due process." [Citation.]' [Citation.]" (*People v. Albarran* (2007) 149 Cal.App.4th 214, 229-230, fn. omitted (*Albarran*).)

Here, as demonstrated above, there were "'permissible inferences'" (*Albarran*, *supra*, 149 Cal.App.4th at p. 229), the jury could have drawn from the uncharged acts

13

evidence, viz., appellant's motive and intent in committing the instant offenses and that he committed both the uncharged and charged acts pursuant to a common plan. Indeed, the court instructed the jury it could not consider the uncharged acts evidence for any purpose other than intent, motive or common plan, and specifically that the evidence could not be considered to show a propensity to commit crime. We ordinarily presume jurors are able to understand and follow instructions. (*People v. Yeoman* (2003) 31 Cal.4th 93, 139.) Nothing in the record here rebuts that presumption.

Moreover, admission of the uncharged acts evidence in compliance with Evidence Code section 352 did not prevent a fair trial. (Cf. *People v. Gurule* (2002) 28 Cal.4th 557, 620 [ordinary rules of evidence generally do not infringe on the right to present a defense; rejecting argument that restricted cross-examination violated rights to confrontation, due process, and a fair trial].) Admission of the uncharged acts evidence thus did not violate appellant's due process rights.

### Sentencing Error

The court here found true allegations that appellant was convicted of attempted robbery in 1997 and that he served a prison term for that conviction. The court imposed both a five-year prior serious felony enhancement (§ 667, subd. (a)) and a one-year prior prison term enhancement (§ 667.5, subd. (b)) based on these findings. As appellant argues, and the People properly concede, this was error: "[W]hen multiple statutory enhancement provisions are available for the same prior offense, one of which is a section 667 enhancement, the greatest enhancement, but only that one, will apply." (*People v. Jones* (1993) 5 Cal.4th 1142, 1150.) Thus, the one-year prior prison term enhancement imposed under section 667.5, subdivision (b) must be stricken. (*Jones*, at p. 1153.)

14

## DISPOSITION

The judgment is modified as follows:  The prior prison term enhancement (Pen. Code, § 667.5, subd. (b)) is stricken.  The trial court is directed to prepare an amended abstract of judgment that reflects this modification and to forward a certified copy to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.